NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERSHAM BIOSCIENCES CORP., AMERSHAM PLC, and IMAGING RESEARCH, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERKINELMER, INC., <br><br> Defendant. | Civil Action No.: 03-4901 (JLL) <br><br><br> **O P I N I O N  &  O R D E R** |

**APPEARANCES:**

Robert H. Stier, Jr., Esq.
Margaret Minister O'Keefe, Esq.
Pierce Atwood
One Monument Square
Portland, ME 04101

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
    (For Plaintiffs)

Matthew B. Lowrie, Esq.
Robert J. Silverman, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA 02142

Jay Scott MacNeill, Esq.
Post, Polak, Goodsell, MacNeill, & Strauchler, P.A.
425 Eagle Rock Ave., Suite 200
Roseland, NJ 07068
    (For Defendant)

**LINARES**, District Judge.

## INTRODUCTION

This matter comes before the Court by application for claim construction by Plaintiffs Amersham Biosciences Corp., Amersham PLC, and Imaging Research, Inc. (hereinafter "Plaintiffs" or "Amersham") and Defendant PerkinElmer, Inc. (hereinafter "Defendant" or "PerkinElmer"). This lawsuit concerns United States Patent No. 6,563,653 ("the '653 patent"), entitled "Digital Imaging System for Assays in Well Plates, Gels and Blots;" United States Patent No. 6,498,690 ("the '690 patent"), entitled "Digital Imaging System for Assays in Well Plates, Gels and Blots;" and United States Patent No. 6,524,786 ("the '786 patent" or "the Jessop patent") entitled "Scintillation Proximity Test." Amersham brings this action against PerkinElmer for patent infringement. Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), and 1400(b). This Opinion addresses the proper construction of the disputed claim terms with respect to portions of the '653 and the '690 patents.

## FACTUAL AND PROCEDURAL BACKGROUND

The patents in suit relate to high throughput screening of drug candidates. The '690 patent and the '653 patent (the "Ramm patents") disclose a method and system, respectively, for analyzing the results of multiple assays simultaneously by creating a digital image of the assays, which are typically conducted in the wells of multi-sample plates. Plaintiffs assert all four claims of the '690 patent and all five claims of the '653 patent against Defendant. The '786 patent (the "Jessop patent") discloses an improved method of performing one of the assays useful in high throughput screening, a scintillation proximity assay. Only claims 1 through 4 of the Jessop patent are being

asserted against Defendant.

On October 16, 2003, Plaintiffs filed the instant action against Defendant for alleged patent infringement of all three patents in suit. Thereafter, the parties set forth the claim terms at issue and fully briefed the issue of the proper interpretation of those portions of the claims of the patents at issue. On March 22, 2006, this Court conducted a <u>Markman</u> hearing. During the March 22, 2006 hearing, the parties advised this Court that they agreed to the construction of several claim terms, including all of the disputed claim terms in the Jessop patent and two of the disputed claim terms in the Ramm patents. Since the parties stipulated to the following constructions of the following terms, they are no longer at issue:

> (1) "scintillation proximity test" – This term appears in claims 1-4 of the '786 patent. The agreed upon construction is "a test in which a surface carrying a phosphor is contacted with a body of fluid containing a radioisotope, where part of the radioisotope becomes immobilized adjacent to the surface and the remainder of the radioisotope remains dispersed or dissolved in fluid, and where that part of the radioisotope immobilized adjacent to the surface is capable of exciting phosphor carried by the surface, but that part of radioisotope dispersed or dissolved in the fluid is generally too far from the surface to be capable of exciting phosphor carried by the surface." (Pl.'s Claim Construction Br. at 11, Markman hearing Transcript dated March 22, 2006 ("Tr.") at 13:3-11).
>
> (2) "phosphor" – This term appears in claims 1-4 of the '786 patent. The agreed upon construction is "a material that when stimulated emits radiation, for example, in the form of visible light." (Tr. 34:12-35:1; Ct. Ex. 1).
>
> (3) "image detection device" – This term appears in all claims of the '690 patent and the '653 patent. The agreed upon construction is "a device that detects an image." (Tr: 35:3-5, Ct. Ex. 1).
>
> (4) "CCD camera" – This term appears in claims 2 and 3 of the '690 patent and claims 2 and 3 of the '653 patent. The agreed upon construction is "charge coupled device with an aperture." (Pl.'s Br. at 8, Tr. 12:18-13:1).

Presently, this Court must determine the correct construction of the remaining disputed terms as used in the claims of the '690 and '653 patents.

## DISCUSSION

### A. Principles of Claim Construction

Determining patent infringement requires a two-step analysis. Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999). First, the court must determine, as a matter of law, the correct scope and meaning of any disputed claim terms. Id.; see also Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); Hormone Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 1562 (Fed. Cir. 1990) (recognizing that the patent claim interpretation process requires review of the scope of the patent claim). Second, the court must compare the properly construed claims to the accused device (or method) and determine whether the accused device contains all of the limitations of the claimed invention. Johnson Worldwide, 175 F.3d at 988.

Presently, this Court must address the first step of the two-step analysis of this patent infringement action. "It is a 'bedrock principle' of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), cert. denied, __ U.S. __, 126 S. Ct. 1332 (2006) (internal quotation omitted). In construing the terms of a patent, a court should look first to the language of the claim itself. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The terms in the claim "are generally given their ordinary and customary meaning." Id. at 1582. The claims must be construed from the perspective of a person of ordinary skill in the art as of the time the

invention became an invention.  A court "must look at the ordinary meaning in the context of the written description and the prosecution history."  Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, 415 F.3d at 1314 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). The court should look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean."  Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004).  In addition, "a claim is construed without regard to the accused product."  Jurgens v. McKasy, 927 F. 2d 1552, 1560 (Fed. Cir. 1991).

The Federal Circuit has repeatedly and recently held that intrinsic evidence is the key initial component toward claim construction.  "[W]e have emphasized the importance of intrinsic evidence in claim construction."  Phillips, 415 F.3d at 1317.  "The intrinsic record in a patent case is the primary tool to supply the context for interpretation of disputed claim terms."  V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (citing Vitronics Corp, 90 F.3d at 1582).

To this end, the court should first examine the intrinsic record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Vitronics, 90 F.3d at 1582 (citing Markman, 52 F.3d at 979).  The specification, for example, "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."  Id.  Indeed, the Federal Circuit explains that the

specification is "'[u]sually . . . dispositive . . . [and] the single best guide to the meaning of a disputed term.'" Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582).

The Federal Circuit suggests that the patent itself and its prosecution history constitute the intrinsic evidence. See Phillips, 415 F.3d at 1317. "[T]he specification is 'the single best guide to the meaning of a disputed term.'" Id. at 1321 (citations omitted). "The importance of the specification in claim construction derives from its statutory role." Id. at 1316. "The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'" Id. (quoting 35 U.S.C. § 112, ¶ 1).

The first paragraph of 35 U.S.C. § 112 states that a patent "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112 ¶ 1; see also Phillips, 415 F.3d at 1311. "The invention is, for purposes of the 'written description' inquiry, whatever is now claimed." Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1564 (Fed. Cir. 1991). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." Phillips, 415 F.3d at 1317. "The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." Id. at 1315 (quoting Markman, 52 F.3d at 978) (internal citation omitted).

Although "extrinsic evidence may be useful to the court, [] it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the

intrinsic evidence." Id. at 1319.

> Nonetheless, because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.

Id.

Phillips also specifically addresses the use of extrinsic dictionaries in construing claims. "[T]he use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent." Id. at 1322 (citing Smith v. Snow, 294 U.S. 1, 14 (1935)). "[A] general-usage dictionary cannot overcome art-specific evidence of the meaning" of a claim term." Id. (citation omitted).

> Even technical dictionaries or treatises, under certain circumstances, may suffer from some of these deficiencies. There is no guarantee that a term is used in the same way in a treatise as it would be by the patentee. In fact, discrepancies between the patent and treatises are apt to be common because the patent by its nature describes something novel.

Id. (citation omitted). No matter, the holding in Phillips leaves the use of dictionaries as within the trial judge's discretion, but includes dictionaries within the less useful category of extrinsic evidence. Id.

With this framework in mind, the Court now turns to the disputed claim language.

**B. The Disputed Claim Terms**

In view of the March 22, 2006 hearing before this Court, the remaining disputed language of the '653 patent and the '690 patent consists of the following: (1) "a telecentric lens," (2) "suitable for imaging said multi-sample plate," (3) "system," and (4) "telecentric lens means for peering into the well."

*(1) "a telecentric lens"*

The term in question appears either directly or by reference in all claims of both the '653 and '690 patents. Plaintiffs assert that the term should be construed as "a special lens that collects parallel rays." Plaintiffs rely on the specification of the '690 patent which states, for example, that "a telecentric lens collects parallel rays." Defendant asserts that the term reflects an express disavowal to the use of dichroic mirrors and a limitation as to internal illumination.

Beginning with the claims in the '653 and '690 patents, there is no mention or reference in any of the claims to either dichroic mirrors or internal illumination. Claim 4 of the '690 patent, for example, expressly refers to collecting light from a multi-sample plate without noting the light source. Similarly, claim 1 of the '653 patent expressly refers to the lens collecting light and identifies the source as "light incident thereon [the multi-sample plate] or originating from a sample." ('653 patent, col. 21, ln. 7-9).

Moving to the specifications, the '653 patent points to a description of "a telecentric lens." "A telecentric lens is free of parallax error." ('653 patent, col. 12, ln. 39-40).[1] "A telecentric lens collects parallel rays, over the entire area of a well plate." ('653 patent, col. 12, ln. 45-46).[2] In addition, the '653 and '690 specifications point directly to the two items raised by defendant. "A unique property of the present invention is that no dichroic is necessary. The telecentric lens is large, so there is room to install an illumination assembly within its body." ('653 patent, col. 12 ln. 11-13).[3]

In general, when a term implicitly suggests a broader meaning, there is no express

---

[1] The identical language appears in the '690 patent, col. 12, ln. 39-40.
[2] The identical language appears in the '690 patent, col. 12, ln. 45-46.
[3] The identical language appears in the '690 patent, col. 12, ln. 11-13.

disavowal.  See Varco, L.P. v. Pason Sys. USA Corp., 436 F.3d 1368, 1375 (Fed. Cir. 2006).  In Varco, the court noted that "the applicant could have used terminology such as 'relays are pneumatically operated valves' that expressly disavows alternative structures.  As written, however, the specification contemplates that other structures may 'operate as relays' in addition to the preferred pneumatically operated valves."  Id.

In the case at bar, the Court finds that because the patentee made note that "there is room to install an illumination assembly," the Court finds no express disavowal.  The term is written in open form and the patent neither requires or excludes the use of an illumination device.  Similarly, the phrase "no dichroic is necessary" is not a disavowal of its use and the patent does not require or exclude use of a dichroic mirror.  In both situations and as described in Varco, the drafter could have used terminology to expressly disavow dichroic mirrors or require internal (or external) illumination but left the text in open form.

Defendant also bases its assertion, in part, on a letter written by the inventor indicating the inventor's intent.  However, such a letter is not within the patents or their prosecution history and is therefore extrinsic evidence.  See Phillips, 415 F.3d at 1319.  "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents."  Id.  (quoting Southwall Techs. Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir.), cert. denied, 516 U.S. 987 (1995)).  However, despite what the inventor's intentions may have been, the patent itself serves the public notice function and is a part of the intrinsic evidence, as contrasted with the inventor's letter, which does

not serve the public notice function and is extrinsic, and the term itself can be construed absent the extrinsic evidence. As such, the inventor's letter is not relevant to claim construction here.

As such, the Court finds that the term "a telecentric lens" is construed simply as "a special lens which collects parallel rays."

### (2) "suitable for imaging said multi-sample plate"

The term in question appears either directly or by reference in claims 1-4 of the '653 patent. The primary area of contention is the phrase "suitable for imaging." Plaintiffs assert that suitable refers to size for creating an image and being large enough to "image an entire well plate at once." ('653 patent, col. 5, ln. 4-5). Defendant asserts that suitable may include size but, because the patentee did not specifically assert "size" and instead asserted "suitable," the term cannot refer only to size and, in particular, refers to the necessity for internal illumination and suitable for use without a dichroic mirror and, as such, does not have a plain and ordinary meaning.

In analyzing the language of the claim, the Court reiterates that the invention neither requires nor prohibits either internal illumination or dichroic mirrors, because the Court has already construed the lens to require neither a dichroic mirror nor internal illumination. Claim 1 of the '653 patent states that the invention is "comprising: <u>a telecentric lens</u> suitable for imaging said multi-well plate <u>positioned</u> to collect light from said plate. . . ." ('653 patent, col. 21, ln. 8-10, emphasis added). By its plain reading, "suitable" must refer to a positioned telecentric lens that is used "for imaging", and the term "a telecentric lens" has been construed as "a special lens which collects parallel rays." Because size is not explicitly stated as a part of the intrinsic evidence, the Court

construes the term "suitable for imaging" as "can be used for creating an image."

Defendant also asserts that the terms "multi-sample plate" and "multi-well plate" are used interchangeably, and are, thus, invalid for indefiniteness. Plaintiffs' rebuttal brief admits that the terms are used interchangeably because they involve the same physical structure. It is the position of plaintiffs that a person of ordinary skill in the art would understand that "multi-sample plates" and "multi-well plates" are the same physical structure -- merely observed from different vantage points.

In determining whether a claim is indefinite, the Federal Circuit has held, "a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness." Bancorp Serv., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004). To be sure, claims need not "be plain on their face in order to avoid condemnation for indefiniteness; rather, what [this court has] asked is that the claims be amenable to construction, however difficult that task may be." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Moreover, "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." Id. Claims are only found to be indefinite where reasonable efforts at construing the claim are in vain. Id. (stating that courts "protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal."). As such, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." Id. at 1380.

In the matter at hand, multi-sample plates describe contents from the vantage point of the samples whereas multi-well plates describe contents from the vantage point of the wells. Since multiple samples go into multiple wells, in this instance, the plate is the mechanism for holding the wells that contain the samples. Therefore, this Court concludes that the interchangeable use of the terms "multi-sample plate" and "multi-well plate" in claims 1-4 of the '653 patent does not preclude the construction of the claims or create indefiniteness.

Turning to the claim construction, the phrase "said multi-sample plate" refers, for example, in claim 1, directly to "a multi-sample plate having at least one sample in a recessed well." '653 patent, col. 21, ln. 5-6. Claims 1-4 of the '653 patent specifically apply to a multi-sample plate with at least one recessed well. Although Plaintiff admits that generally the terms would have different meanings, a person skilled in the art would understand that these claims themselves are limited to plates with at least one recessed well. The multi-well feature is read by the Court as a limitation of the multi-sample plate for purposes of these claims. As such, the Court construes the entire disputed term as "can be used for creating an image of a multi-sample plate having at least one sample in a recessed well."

### (3) "system"

The term in question appears either directly or by reference in all five claims of the '653 patent. Plaintiffs assert that "system" is set apart in the preamble and does not create a limitation and that the particulars of the system are described within the claims. The word "system" only appears in the preamble, which sets it apart from the remaining parts of the claim. In the alternative, Plaintiffs assert that even if it did create a

limitation, it is a common, ordinary word and should be given its common, ordinary meaning. In addition, within the claims, Plaintiffs rely on statements in the specification noting that the "invention is the system." Defendant asserts that the word does not add to the patent in that it does not describe which items are included and is used vaguely throughout the specification.

The Court agrees with Plaintiffs that the word "system" appears only in the preambles of each of the five claims. "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." Catalina Mktg. Int'l v. Coolsavings, 289 F.3d 801, 808 (Fed. Cir. 2002). "Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Id. at 809 . "[O]ne cannot determine a preamble's effect except by reference to the specific claim of which it is a component." Bell Commc'ns Research v. Vitalink Commc'ns Corp., 55 F.3d 615, 621 (Fed. Cir. 1995). "In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim." On Demand Mach. Corp. v. Ingram Indus., 442 F.3d 1331, 1343 (Fed. Cir. 2006). In On Demand Machine Corp., the court stated that

> the entirety of the claim implements the preamble's high speed manufacture of a single copy, upon customer review of the stored sales information, promptly printing and binding the single copy in response to the customer's selection. The preamble embraces the totality of these limitations, and limits the claim to the subject matter of the preamble.

Id. at 1344.  By contrast in this case, the remainder of the claims are fully articulated absent the preamble.  The preamble does not breathe life into the claims and does not limit the claims in any way; it merely provides introductory terminology for the remainder of the claim.  Here, the preamble merely states that it is a system claim, namely "[a] system for imaging assays," distinguishable from a method claim or an apparatus claim.  Since the Court determines that the term "system" in the preamble is not limiting, no further construction is required.

Defendant also asserts that the term "method" appearing in the preamble of all four claims in the '690 patent must also be construed.   However, the two Ramm patents distinguish themselves in that one identifies itself as a system in the preamble and one identifies itself as a method in the preamble, namely "[a] method for imaging assays."  As with the term "system," the Court finds that the word "method" does not create a limitation and does not need to be construed.

### *(4)  "telecentric lens means for peering into the well"*

The term in question appears in claim 5 of the '653 patent.  Plaintiffs assert that the term should be construed to not limit the claim to the reference of a telecentric lens.  Plaintiffs assert that because the structural component, the telecentric lens, is expressly recited in the claim, it is not appropriate to treat the phrase as a means-plus-function limitation per 35 U.S.C. § 112, ¶ 6.  In contrast, Defendant asserts that because (1) the phrase's express statement is in means-plus-function format, together with (2) the patentee's assertion of applying 35 U.S.C. § 112, ¶ 6 during the prosecution history, the Court should treat "telecentric lens" as a limitation to the claim.

"An element in a claim for a combination may be expressed as a means or step for

performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6. "Whether certain claim language invokes 35 U.S.C. § 112, [¶] 6 is an exercise in claim construction and is therefore a question of law." Personalized Media Commc'ns., L.L.C. v. ITC, 161 F.3d 696, 702 (Fed. Cir. 1998).

The use of the word "means" in the claim invokes a presumption that the patentee invokes the statutory mandate for means-plus-function clause. Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1302 (Fed. Cir. 1999), cert. denied, 528 U.S. 1115 (2000).

> Two specific rules, however, overcome this presumption. First, a claim element that uses the word 'means' but recites no function corresponding to the means does not invoke § 112, [¶] 6. Second, even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112, [¶] 6 does not apply.

Id. (internal citation omitted). The Court begins its construction by adopting the presumption that the patentee invoked the means-plus-function format. However, moving directly to the second exception, the claim element does specify a function ("peering into the well") but also recites a sufficient structure for performing that function (the "telecentric lens"). Although Defendant asserts that such function is insufficient without illumination, the specification does recognize that such illumination can be from the sample within the well and, as such, external illumination is not necessary and the telecentric lens alone represents sufficient structure.

Defendant also asserts that through the prosecution history, Plaintiffs invoked 35 U.S.C. § 112 ¶ 6 and, as a result, prosecution history estoppel requires the Court to construe the telecentric lens as a limitation. To begin with, the prosecution history

directs the examiner that the claim should be considered as structure under § 112 ¶ 6.[4] However, once the applicant directs the examiner to view the telecentric lens as a structure, the applicant directs the examiner toward the second rule to overcoming the means-plus-function presumption of § 112 ¶ 6. The claim was subsequently accepted unchanged by the examiner. In addition, the prosecution history makes no explicit mention of this claim relative to means-plus-function, nor does the examiner explicitly accept it as such. Because the prosecution history points directly at the second rule to overcoming the means-plus-function presumption, the prosecution history supports that the "telecentric lens" is not a limitation to the claim.

As a matter of law, this Court construes that the term "telecentric lens" is a sufficient structure to support the function of "peering into the well." The Court does not accept Defendant's argument of construing the telecentric lens as a limitation stemming from construing the phrase in means-plus-function format of 35 U.S.C. § 112 ¶ 6.

## CONCLUSION

ACCORDINGLY, having considered the submissions of the parties and following oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Court construes the disputed claim language of the United States Patent No. 6,563,653 and United States Patent No. 6,498,690 as follows:

(1) The language "a telecentric lens," as contained in claims 1-4 of the '690 patent and claims 1-5 of the '653 patent, is construed to mean "a special lens which collects parallel rays."

(2) The language "suitable for imaging said multi-sample plate," as contained in

---

[4] The prosecution history refers to 37 U.S.C. § 112, ¶ 6 instead of 35 U.S.C. § 112, ¶ 6. The Court agrees with Plaintiffs' argument that the citation to Title 37 is an error.

claims 1-4 of the '653 patent, is construed to mean "can be used for creating an image of a multi-sample plate having at least one sample in a recessed well," and the Court finds no indefiniteness in the language.

(3) The language "system," as contained in claims 1-5 of the '653 patent, and the language "method," as contained in claims 1-4 of the '690 patent, do not create a limitation and no construction is necessary.

(4) The language "telecentric lens means for peering into the well," as contained in claim 5 of the '653 patent, should not be construed in means-plus-function format pursuant to 35 U.S.C. § 112 ¶ 6, and is sufficient pursuant to the construction of "a telecentric lens" above.

It is so ordered.

DATED: May 23, 2006

/s/ Jose L. Linares  
JOSE L. LINARES,  
UNITED STATES DISTRICT JUDGE