**UNITED STATES DISTRICT COURT**
District of New Jersey

| | |
|---|---|
| CHAMBERS OF<br>**JOSE L. LINARES**<br>JUDGE | MARTIN LUTHER KING JR.<br>FEDERAL BUILDING & U.S. COURTHOUSE<br>50 WALNUT ST., ROOM 5054<br>P.O. Box 999<br>Newark, NJ 07101-0999<br>973-645-6042 |

**NOT FOR PUBLICATION**

**LETTER OPINION**

January 31, 2007

Robert H. Stier, Jr., Esq.
Margaret Minister O'Keefe, Esq.
Pierce Atwood
One Monument Square
Portland, ME 04101

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Matthew B. Lowrie, Esq.
Robert J. Silverman, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA 02142

Jay Scott MacNeill, Esq.
Post, Polak, Goodsell, MacNeill, & Strauchler, P.A.
425 Eagle Rock Ave., Suite 200
Roseland, NJ 07068

    Re:    **Amersham Biosciences Corp., et al. v. PerkinElmer, Inc.**
               Civil Action No.: 03-4901 (JLL)

Dear Counsel:

    This matter comes before the Court on PerkinElmer's appeal of Magistrate Judge Hedges' May 1, 2006 Order concerning Plaintiff's motion for the return of produced documents and Defendant's motion to compel, as well as Amersham's cross-appeal of Magistrate Judge Hedges' April 20, 2006 Order, both brought pursuant to Local Civil Rule 72.1(c)(1)(A). This Court has considered the submissions made in support of and in opposition to the respective appeals. This matter is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Magistrate Judge Hedges' May 1 Letter Opinion and Order is reversed and remanded, and Magistrate Judge Hedges' April 20, 2006 Order is affirmed.

**BACKGROUND**

    In January 2005, Amersham produced certain CDs allegedly containing over five hundred inadvertently produced privileged e-mails that had been derived from a single Lotus Notes DVD. According to Plaintiff, the privileged e-mails (and other non-responsive e-mails) had been segregated into subfolders, and these subfolders had been deleted prior to the submission of the

DVD to a vendor for processing. Plaintiff blames this inadvertent production on the fact that in the Lotus Notes application, unlike Microsoft Outlook and other email platforms, even though e-mails had been moved and segregated into separately labeled subfolders, and said folders subsequently deleted, a copy of these e-mails still remained in the larger folder structure. As such, when Applied Discovery converted the e-mails from their native form into single page image files, the e-mails which Plaintiff had allegedly segregated into a "privileged" subfolder, and subsequently deleted, actually remained in the larger folder structure, and were thus produced to the Defendant.

On April 15, 2005, after having discovered this error in production, Plaintiff contacted Defendant to inform Defendant of the error. On April 18, 2005, Magistrate Judge Hedges held a conference call to address whether the inadvertently disclosed documents could be used during the deposition of Plaintiff's employee, Dr. Martin Bye. At that time, Magistrate Judge Hedges ordered that Defendant could utilize the inadvertently produced documents in deposing Dr. Bye, with the understanding that there would be a subsequent determination on the merits. Plaintiff subsequently sought the return of the inadvertently produced documents.

Defendant claims that although it was notified in April 2005 that certain documents had been inadvertently produced, it was not notified as to specifically which documents comprised the inadvertently produced documents until July 2005. As a result, Defendant argues that Plaintiff's application for the return of the inadvertently produced documents should be denied because Plaintiff violated the terms of the July 24 Protective Order[1] – namely by failing to make

---

[1] On July 24, 2004, Magistrate Judge Hedges had issued a Stipulation and Protective Order, wherein the parties agreed to the following:

> Inadvertent Production of Privileged Materials: Counsel shall make their best efforts to identify materials protected by the attorney-client privilege or the work product doctrine prior to the disclosure of any such materials. The inadvertent production of any document or thing shall be without prejudice to any claim that such material is protected by the attorney-client privilege or protected from discovery as work product, and no producing party shall be held to have waived any rights by inadvertent production. If a producing party discovers that materials protected by the attorney-client privilege or work product doctrine have been inadvertently produced, counsel for the producing party shall promptly give written notice to counsel for the receiving party. The receiving party shall take prompt steps to ensure that all known copies of such material are returned to the producing party. The receiving party may afterward contest such claims of privilege or work product as if the material had not been produced, but shall not assert that a waiver occurred as a result of the production.

its best efforts in identifying such privileged e-mails, and secondly, because prompt notice was not given to the Defendant as to the inadvertent disclosure of same.

  At the March 27, 2006 hearing, Magistrate Judge Hedges made several findings, ordered the production of a separate group of 37 documents (hereinafter "Non-Lotus Notes Documents"), and reserved on the issues of whether Plaintiff had preserved the privilege of the 542 Lotus Notes documents (hereinafter "Lotus Notes Documents") which had been inadvertently produced, and whether Defendant was entitled to compel the production of certain additional documents, including prior art as to the Ramm and Jessop patents. In particular, at the March 27 hearing, Magistrate Judge Hedges determined that, with respect to the 37 Non-Lotus Notes Documents which had been inadvertently produced by Plaintiff as a result of their electronic discovery vendor having made them intelligible, their privilege had been waived and were thus freely available to Defendant. On April 20, 2006, Magistrate Judge Hedges issued an Order to that effect.

  On May 1, 2006, Magistrate Judge Hedges issued a Letter Opinion and Order finding that Plaintiff had not, however, waived the privilege of the Lotus Notes Documents, and was thus entitled to the return of same. In reaching this decision, Magistrate Judge Hedges noted that the inadvertently produced Lotus Notes Documents "were imbedded in metadata and were not apparent on the face of the documents, [and as a result] Perkinelmer knew or should have known that the information which was retrieved from the metadata was not intended for disclosure." (May 1, 2006 Opinion ("May 1 Op.") at 7). In addition, Magistrate Judge Hedges determined that because Defendant was not entitled to review the Lotus Notes Documents in the first place, Defendant should not be permitted to benefit from its violation of an ethical duty, and thus was not entitled to a determination on whether the material itself was privileged. Finally, with respect to the additional documents which Defendant sought to compel – the prior art as to the Ramm and Jessop patents, as well as related communications pertaining to Plaintiff's first application which were allegedly not disclosed to the PTO – Magistrate Judge Hedges determined that Defendant's request was based upon information which it should never have reviewed, and that Defendant had therefore failed to set forth any ground on which it should be entitled to same.

## LEGAL STANDARD

  A United States Magistrate Judge may hear and determine any [non-dispositive] pretrial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A). The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). Therefore, "this Court will review a magistrate judge's findings of fact for clear error." Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995)). Under this standard, a finding is

---

July 24 Order, ¶ 12.

clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. Bowen v. Parking Auth. of City of Camden, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review."  Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000).

In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion.  Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion").  "This deferential standard is 'especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings.'"  Lithuanian Commerce Corp., 177 F.R.D. at 214 (quoting Pub. Interest Research Group v. Hercules, Inc., 830 F. Supp. 1525, 1547 (D.N.J. 1993), aff'd on other grounds and rev'd on other grounds, 50 F.3d 1239 (3d Cir. 1995)).

However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo.  See Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); Lo Bosco, 891 F. Supp. at 1037.  A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law.  Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

In light of this framework, the Court turns to Defendant's appeal of Magistrate Judge Hedges' May 1 Letter Opinion and Order, and Plaintiff's cross-appeal of Magistrate Judge Hedges' April 20 Order.

## DISCUSSION

**A.    May 1, 2006 Opinion and Order – Lotus Notes Documents**

At the outset, the Court notes that in reviewing the transcript of the March 27 hearing, it appears that there was some confusion as to the specific number of documents that constituted the "Lotus Notes Documents."  As a result of this confusion, it appears that Magistrate Judge Hedges mistakenly referred to the number of said Lotus Notes Documents as 579, as opposed to 542,[2] in his May 1 Letter Opinion.  However, a review of the March 27 Transcript indicates that

---

[2] It appears that Magistrate Judge Hedges merely used the total number of documents that Plaintiff claimed had been inadvertently produced (579), rather than only the number of those documents which fell within the category of Lotus Notes Documents (542).  Because Magistrate

4

Magistrate Judge Hedges was fully aware of the distinction between the two categories of inadvertently produced documents: the (37) "unintelligible" documents, and the (542) Lotus Notes documents.  See Tr. (March 27, 2006)  at 4:9-13 (differentiating between the "542 documents that were inadvertently produced because they were on the Lotus Notes, as opposed to the 37 other documents"); id. at 5:18-19 (stating "let's leave the 37 aside, let's talk about the 542").[3]  As a result, the Court finds that any discrepancy in the number of Lotus Notes Documents at issue in the May 1, 2006 Opinion to be harmless error.

In determining that Plaintiff's disclosure of the Lotus Notes Documents was, in fact, inadvertent, and that Plaintiff had not waived its privilege with respect to said documents, Magistrate Judge Hedges analyzed the five factors set forth in Ciba-Geigy Corp. v. Sandoz Ltd.. 916 F.Supp. 404, 411 (D.N.J. 1995).  These include:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;
> (2) the number of inadvertent disclosures;
> (3) the extent of the disclosure;
> (4) any delay and measures taken to rectify the disclosure; and
> (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.

Id. at 411.  This Court will review de novo Magistrate Judge Hedges' application of the applicable law to the facts of this case.  Although it does not appear that the Third Circuit has addressed the issue of under what circumstances an inadvertent disclosure of privileged documents constitutes a waiver of that privilege, the court in Ciba-Geigy Corp. cited to several district courts within this Circuit that have adopted the approach of focusing on the reasonableness of steps taken to preserve the confidentiality of the privileged documents. See Ciba-Geigy Corp., 916 F.Supp. at 411 n. 14; see also Redland Soccer Club, Inc. v. Dept. of the Army, 55 F.3d 827, 856 (3d Cir.1995) (suggesting that the Third Circuit would adopt a balancing

---

Judge Hedges' April 20 Order had already addressed the other category of inadvertently produced documents – the 37 Non-Lotus Notes Documents  – that category of documents was necessarily excluded from Judge Hedges' May 1 analysis.

[3]  See also Tr. (March 27, 2006) at 4:9-13 (wherein Magistrate Judge Hedges differentiates between the "542 documents that were inadvertently produced because they were on the Lotus Notes, as opposed to the 37 other documents"), 5:18-19 (wherein Magistrate Judge Hedges states "let's leave the 37 aside, let's talk about the 542"), 7:23-8:2 (wherein Magistrate Judge Hedges states "I understand that there's 542 documents [and] . . . 2400 pages" and Plaintiff's counsel agrees), 9:11-19 (wherein Plaintiff's counsel argues that they made a single, technical mistake, not "542 separate mistakes"), 17:16-19 (wherein Plaintiff's counsel states that 542 is the actual number of documents that fall within the Lotus Notes error category).

test in determining whether an inadvertent disclosure constituted a waiver of privilege).  As a result, the Court will analyze the five factors set forth in Ciba-Geigy Corp. in reviewing Magistrate Judge Hedges' determination that Amersham had preserved the privilege of the 542 Lotus Notes Documents, and is thus entitled to their return.

### 1. Ciba-Geigy Corp. Factors

*Reasonableness of Precautions Taken*

In finding that Amersham had taken reasonable precautions in preserving the confidentiality of its privileged documents, Magistrate Judge Hedges noted the four-step approach attested to by Ms. O'Keefe, counsel for Amersham, which was used to ensure the non-disclosure of confidential information. (May 1 Op. at 5).  The Court has reviewed Ms. O'Keefe's affidavit concerning the four-step approach employed by Amersham in reviewing, segregating, removing, processing and then spot-checking the Lotus Notes Documents prior to their production.  While the Court does not necessarily find that Magistrate Judge Hedges abused his discretion in determining that the four-step process employed by Plaintiff constituted sufficiently reasonable precautions, it appears that Magistrate Judge Hedges based his conclusion on a misunderstanding of fact.  In particular, it appears that Magistrate Judge Hedges believed that "[u]naware of the existence of the underlying metadata or that the confidential information although removed from the face of the documents still existed in the metadata, [Amersham's] counsel was not able to detect Applied Discovery's error and thus forwarded the CDs to PerkinElmer with information not intended for production." (Id. at 2).  As a result of this misunderstanding, Magistrate Judge Hedges went on to conclude that a final spot-check of the CDs received from Applied Discovery was reasonable because "[t]he error was not apparent on the face of the documents."  (Id. at 5).

To the contrary, Plaintiff now admits that the error (i.e., the production of documents which had been segregated and removed from the line of production) was, in fact, apparent on the face of the documents. See Pl. Cross-Appeal at 6 (stating that "[i]n actuality, the documents that were inadvertently disclosed were on their face privileged.  In other words, they were indistinguishable from any of the other documents produced to PerkinElmer").  In fact, according to Defendant, each of the Lotus Notes Documents were bates-stamped, and were stamped with the level of confidentiality chosen by Amersham. (Def. Br. at 35).  As such, in light of Plaintiff's admission that the documents at issue were, in fact, facially privileged and indistinguishable from any other documents which had been properly produced to PerkinElmer, the Court finds that Magistrate Judge Hedges' factual determination that the error made by Amersham and/or its vendor was not apparent on the face of the documents to be clearly erroneous.

Based on this factual error, Magistrate Judge Hedges concluded that (1) Amersham's four-step process constituted a sufficiently reasonable precaution, and (2) that PerkinElmer necessarily "went beyond the confines of the face of the documents and uncovered hidden information." (May 1 Op. at 6, 7).  As a result of these two conclusions – both of which were

based upon a factual misunderstanding – Magistrate Judge Hedges did not determine whether the documents at issue, in fact, contained privileged information.  Rather, Magistrate Judge Hedges found that "[w]hether the actual documents contain privileged information is of no moment as unequivocal evidence should have alerted PerkinElmer to the lack of intent to disclose." (Id. at 7-8).  Additionally, Magistrate Judge Hedges denied Defendant's motion to compel the production of certain additional documents under a theory of common law fraud because Defendant's motion was "necessarily based on information learned through its examination of documents it should not have reviewed in the first instance." (Id. at 8).

Because Magistrate Judge Hedges' legal conclusions were based upon a critical factual misunderstanding, the Court is unable to adequately review whether these legal determinations were contrary to law, or whether the magistrate judge abused his discretion in reaching his conclusions.  For example, in light of the fact that the documents were – as Plaintiff describes – facially privileged, the Court cannot determine whether Magistrate Judge Hedges properly applied the law to the facts of the case in concluding that the final spot-check conducted by Plaintiff (which presumably overlooked 542 facially privileged documents) was reasonable.  Similarly, because Defendant did not "go beyond the confines of the face of the documents" in reviewing the inadvertently produced documents, as misunderstood by Magistrate Judge Hedges, the Court cannot determine whether the magistrate judge abused his discretion in determining that Defendant was not entitled to a determination of whether the documents at issue were privileged, and that Defendant was likewise not entitled to certain withheld documents under a theory of common law fraud.

Therefore, this matter is reversed and remanded to Magistrate Judge Hedges[4] for a revaluation of: (1) whether Amersham preserved the privilege with respect to the Lotus Notes Documents and is thus entitled to their return, and (2) whether PerkinElmer is entitled to certain withheld documents under a theory of common law fraud.

**B.**     **April 20, 2006 Order – Non-Lotus Notes Documents**

In their Cross-Appeal of Magistrate Judge Hedges' April 20, 2006 Order denying Plaintiff's request for the return of the 37 Non-Lotus Notes Documents, Plaintiff argues the following:

> Virtually the same process for reviewing and segregating privileged documents was applied to these 37 documents, the process that Magistrate Judge Hedges concluded was reasonable. . . . By permitting the PerkinElmer to retain the 37 privileged

---

[4] Although Magistrate Judge Hedges is no longer the magistrate judge assigned to this case, in light of his familiarity with the underlying documents and disputes at issue, and in the interest of judicial efficiency, the Court orders that Magistrate Judge Hedges nevertheless address the instant remand.

7

>     documents – one of which is the Dr. Bye memorandum referencing
>     the Marshall, O'Toole due diligence analysis cited at length in
>     PerkinElmer's brief – the April 20, 2006 Order granted
>     PerkinElmer the benefit of its unethical behavior that the
>     Magistrate subsequently sought to avoid in his May 1, 2006 Order.
>     Presumably, the inconsistency between the two orders arises
>     because the earlier order on the 37 documents was issued before
>     the Magistrate had an opportunity to consider all of the legal issues
>     associated with the motions to compel and for return.

(Plaintiff's Cross-Appeal at 26-27).  As such – "for the sake of consistency" – Plaintiff asks that this Court reverse Magistrate Judge Hedges' April 20, 2006 Order.

The Court has thoroughly reviewed Plaintiff's prior submissions to Magistrate Judge Hedges on this issue, as well as the transcript of the March 27, 2006 oral argument held in connection with Plaintiff's motion for the return of inadvertently produced documents.  For example, in their original briefing on this issue, unlike the detailed explanation as to how the Lotus Notes Documents came to be inadvertently produced, Plaintiff submitted that, "[o]ur investigation of these additional 37 documents is not conclusive, but we believe the most likely explanation for production of these additional [documents] is that the CDs and DVDs produced to us contained email archives or other files that the attorney reviewer marked as 'unreadable' which were then processed (i.e., TIFFed) by our outside vendors and produced."  (Pl. Application for Return of Inadvertently Produced Documents, Aff. of Margaret O'Keefre at 5, ¶14).

Similarly, during the March 27, 2006 oral argument, Ms. O'Keefe, Plaintiff's counsel, gave the following explanation as to how the Non-Lotus Notes Documents came to be inadvertently produced:

>     Well, I think – we don't have a full explanation for those either,
>     Your Honor.  Those appear to be a case of true inadvertence.  We
>     were able to determine that a number of them had been initially
>     unreadable files, meaning the – the CDs that were sent to us from
>     the clients that contained native electronic files, also contained
>     certain additional files that were in software that are – was
>     unavailable to us.  These were all coming from Whales and – and
>     the U.K.  When we sent them to the vendor for processing, they
>     were processed, because the vendor had the appropriate software,
>     and not deleted; and, therefore, they were produced.

Tr. (March 27, 2006) at 4:16 - 5:3.

In denying Plaintiff's request for the return of the 37 Non-Lotus Notes Documents, Magistrate Judge Hedges stated the following:

8

> You produced documents, as far as I understand from the record, based on the fact that they're unintelligible and I can't accept that you're entitled to the return of any [such] documents, whether they were made readable or not. . . . I'm not satisfied that you conducted any type of reasonable search with regard to those documents. I can't imagine how unintelligible documents are turned over to an adversary and then you can come in and argue about them somehow being inadvertently produced."

Tr. (March 27, 2006) at 5:8-17.

Although Plaintiff now argues that a similar level of reasonable diligence used in connection with the production of the Lotus Notes Documents was also employed in the review and production of the 37 Non-Lotus Notes Documents, in light of Plaintiff's prior submission on the issue, as well as Ms. O'Keefe's statements at oral argument, the Court finds that Magistrate Judge Hedges did not abuse his discretion in determining that Plaintiff had not taken sufficiently reasonable precautions to avoid the inadvertent disclosure of any such privileged documents, nor was such a finding contrary to law. See, e.g., Ciba-Geigy Corp., 916 F.Supp. at 412 ("Establishing that a disclosure was unintentional . . . does not go far in establishing the absence of waiver. Rather, the party resisting a waiver argument must demonstrate that it undertook reasonable precautions to avoid inadvertent disclosures of privileged documents.").

Accordingly, because the Court agrees that turning over unintelligible or unreadable documents to an adversary evidences a lack of reasonable precaution, Magistrate Judge Hedges' April 20, 2006 Order is hereby affirmed.

## **CONCLUSION**

For the reasons given above, the Court hereby reverses and remands Magistrate Judge Hedges' May 1, 2006 Letter Opinion and Order, and affirms Magistrate Judge Hedges' April 20, 2006 Order.

An appropriate Order accompanies this Letter Opinion.

Sincerely,

/s/ Jose L. Linares
Jose L. Linares
United States District Judge

JLL/mm