**UNITED STATES DISTRICT COURT**
**District of New Jersey**

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

March 14, 2007

Robert H. Stier, Jr., Esq.
Margaret Minister O'Keefe, Esq.
Pierce Atwood
One Monument Square
Portland, ME 04101

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Matthew B. Lowrie, Esq.
Robert J. Silverman, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA 02142

Jay Scott MacNeill, Esq.
Post, Polak, Goodsell, MacNeill, & Strauchler,
P.A.
425 Eagle Rock Ave., Suite 200
Roseland, NJ 07068

Re:   **Amersham Biosciences Corp., et al. v. PerkinElmer, Inc.**
      **Civil Action No.: 03-4901 (JLL)**

Dear Counsel:

    This matter comes before the Court on Plaintiff's motion for reconsideration, in part, of
this Court's January 31, 2007 Letter Opinion and Order affirming Magistrate Judge Hedges'
April 20, 2006 Order.  This Court has considered the submissions made in support of and in
opposition to the motion.  This matter is resolved without oral argument.  Fed. R. Civ. P. 78.  For
the reasons set forth below, Plaintiff's motion for reconsideration is denied.

**BACKGROUND**

    A detailed background of the relevant facts is set forth in this Court's January 31, 2007
Letter Opinion, and will not be repeated here except where necessary to provide context for the
pending motion for reconsideration.

## **LEGAL STANDARD**

**A.     Standard for Reconsideration**

Motions for reconsideration are governed by Local Civil Rule 7.1(i), which provides, in relevant part:

> A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.  A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

L.Civ.R. 7.1(i). Prior to reaching the merits of a motion for reconsideration, the court must determine whether the arguments are appropriately raised under the Local Rule.  Holten v. Chevron, U.S.A., No. 00-4703, 2002 U.S. Dist. LEXIS 10151, *4 (D.N.J. May 20, 2002).  "The motion may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue."  Id.  (citing Student Pub. Interest Research Group of N.J. v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989)).  Relief by way of motion for reargument is "an extraordinary remedy" that is to be granted "very sparingly."  Yurecko v. Port Auth. Trans-Hudson Corp., 279 F. Supp. 2d 606, 608 (D.N.J. 2003); Sagaral v. Mountainside Hosp., No. 99-2785, 2001 U.S. Dist. LEXIS 6872, *3 (D.N.J. Mar. 27, 2001); NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996).  Only in circumstances "where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain such a motion."  Bowers v. N.C.A.A., 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

The purpose of a motion for reargument is "to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).  The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached.  P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001); NL Indus., 935 F. Supp. at 516; 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d., § 2810.1 (1995).  Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process, S.C. ex rel. C.C. v. Deptford Twp. Bd. of Educ., 248 F. Supp. 2d 368, 381 (D.N.J. 2003).

With this legal framework in mind, the Court will now consider Plaintiff's motion for reconsideration.

## DISCUSSION

The Court must first determine whether Plaintiff's arguments are properly raised under Local Civil Rule 7.1(i), thus permitting this Court to reach the merits of the motion for reconsideration. See, e.g., Holten, 2002 U.S. Dist. LEXIS 10151, at *4. Plaintiff asserts that its motion is based on the need to prevent a manifest injustice. See Max's Seafood Café v. Max Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (explaining that "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."). While Plaintiff's motion appears to be properly raised under Local Civil Rule 7.1(i), for the reasons that follow, Plaintiff's motion is nevertheless denied.

By way of background, in their Cross-Appeal of Magistrate Judge Hedges' April 20, 2006 Order denying Plaintiff's request for the return of the 37 non-Lotus Notes documents, Plaintiff argued the following:

> Virtually the same process for reviewing and segregating privileged documents was applied to these 37 documents, the process that Magistrate Judge Hedges concluded was reasonable. . . . By permitting PerkinElmer to retain the 37 privileged documents – one of which is the Dr. Bye memorandum referencing the Marshall, O'Toole due diligence analysis cited at length in PerkinElmer's brief – the April 20, 2006 Order granted PerkinElmer the benefit of its unethical behavior that the Magistrate subsequently sought to avoid in his May 1, 2006 Order. Presumably, the inconsistency between the two orders arises because the earlier order on the 37 documents was issued before the Magistrate had an opportunity to consider all of the legal issues associated with the motions to compel and for return.

(Plaintiff's Cross-Appeal at 26-27). As such – "for the sake of consistency" – Plaintiff asked that this Court reverse Magistrate Judge Hedges' April 20, 2006 Order.

In this Court's January 31, 2007 Letter Opinion, the Court found that "Magistrate Judge Hedges did not abuse his discretion in determining that Plaintiff had not taken sufficiently reasonable precautions to avoid the inadvertent disclosure of any such privileged documents, nor was such a finding contrary to law." (Jan. 31 Op. at 9) (citing to Ciba-Geigy Corp. v. Sandoz Ltd.. 916 F. Supp. 404, 412 (D.N.J. 1995)).

Plaintiff now argues that "reconsideration of this Court's January 31, 2007 Letter Opinion is necessary to prevent manifest injustice." (Plaintiff's Motion for Reconsideration

3

(hereinafter "Pl. Br.") at 1).  In particular, Plaintiff asks that the Court reverse and remand the April 20 Order "for a global determination as to the applicability of the Stipulated Protective Order[1] and New Jersey Rule of Professional Conduct 4.4(b)[2] to the circumstances leading up to Defendant's review and use of the privileged documents."[3] (Pl. Br. at 5).  Plaintiff's "manifest

---

[1] On July 24, 2004, Magistrate Judge Hedges had issued a Stipulation and Protective Order, wherein the parties agreed to the following:

> Inadvertent Production of Privileged Materials: Counsel shall make their best efforts to identify materials protected by the attorney-client privilege or the work product doctrine prior to the disclosure of any such materials.  The inadvertent production of any document or thing shall be without prejudice to any claim that such material is protected by the attorney-client privilege or protected from discovery as work product, and no producing party shall be held to have waived any rights by inadvertent production.  If a producing party discovers that materials protected by the attorney-client privilege or work product doctrine have been inadvertently produced, counsel for the producing party shall promptly give written notice to counsel for the receiving party.  The receiving party shall take prompt steps to ensure that all known copies of such material are returned to the producing party.  The receiving party may afterward contest such claims of privilege or work product as if the material had not been produced, but shall not assert that a waiver occurred as a result of the production.

July 24 Order, ¶ 12.

[2] New Jersey Rule of Professional Conduct 4.4(b) provides that "[a] lawyer who receives a document and has reasonable cause to believe that the document was inadvertently sent shall not read the document or, if he or she has begun to do so, shall stop reading the document, promptly notify the sender, and return the document to the sender."

[3] To the extent that Plaintiff argues that Magistrate Judge Hedges' April 20, 2006 Order was issued before he "had an opportunity to consider all of the legal issues associated with motions to compel and for return," the Court notes that it has already considered and rejected this argument on appeal. (Pl. Cross Appeal Br. at 27). The Court reviewed the transcript from the March 27, 2006 oral argument and found that Magistrate Judge Hedges was sufficiently aware of both Defendant's ethical obligations, as well as the July 24 Protective Order, albeit in the context of determining whether Plaintiff had waived the privilege of the Lotus Notes documents. See Tr. (March 27, 2006) at 11:9-12.  The fact that Magistrate Judge Hedges chose to devote less time to his analysis of whether Plaintiff had waived the privilege of the non-Lotus Notes documents, as compared to whether Plaintiff had waived the privilege of the Lotus Notes documents, does

4

injustice" argument is based on the proposition that a "manifest injustice" would occur if it is determined that Plaintiff has waived the privilege of the (37) non-Lotus Notes documents, but has potentially preserved the privilege of the (542) Lotus Notes documents.[4]

        As a preliminary matter, the Court finds Plaintiff's reliance on the argument that Magistrate Judge Hedges' April 20, 2006 and May 1, 2006 Orders were "inconsistent" to be misplaced.  As addressed in this Court's January 31 Opinion, the circumstances giving rise to the production of both sets of documents – as described by Plaintiff – were distinct.  Unlike the detailed  explanation as to how the Lotus Notes documents came to be inadvertently produced, Plaintiff submitted that, "[o]ur investigation of these additional 37 documents is not conclusive, but we believe the most likely explanation for production of these additional [documents] is that the CDs and DVDs produced to us contained email archives or other files that the attorney reviewer marked as 'unreadable' which were then processed (i.e., TIFFed) by our outside vendors and produced."  (Pl. Application for Return of Inadvertently Produced Documents, Aff. of Margaret O'Keefe at 5, ¶14).  Similarly, during the March 27, 2006 oral argument before Magistrate Judge Hedges, Ms. O'Keefe, Plaintiff's counsel,  gave the following explanation as to how the non-Lotus Notes documents came to be inadvertently produced:

> Well, I think – we don't have a full explanation for those either, Your Honor.  Those appear to be a case of true inadvertence.  We were able to determine that a number of them had been initially unreadable files, meaning the – the CDs that were sent to us from the clients that contained native electronic files, also contained certain additional files that were in software that are – was unavailable to us.  These were all coming from Whales and – and the U.K.  When we sent them to the vendor for processing, they were processed, because the vendor had the appropriate software, and not deleted; and, therefore, they were produced.

---

not itself indicate that Magistrate Judge Hedges was not fully aware of, and had not considered, all of the legal issues associated with same.  To the contrary, it reiterates his belief that the precautions taken by Plaintiff in preventing the inadvertent disclosure of the non-Lotus Notes documents were unquestionably unreasonable, and thus did not warrant a lengthy analysis.

    [4] Plaintiff does not move on the basis that there has been a change in controlling law.  Nevertheless, in passing, Plaintiff cites to new Federal Rules of Civil Procedure 16(b)(6) and 26(b)(5)(B), without noting that they became effective on December 1, 2006 – eight months after Magistrate Judge Hedges had rendered his April 20, 2006 decision.  Not only were these rules not in effect at the time Magistrate Judge Hedges rendered his decision with respect to the non-Lotus Notes documents, but Plaintiff also failed to bring these new rules to the Court's attention while its Cross-Appeal was pending before this Court.  As a result, the new rules will not be addressed herein.

5

Tr. (March 27, 2006) at 4:16 - 5:3. In particular, whereas Plaintiff represents that the Lotus Notes documents had been deleted but were nevertheless produced as a result of an unknown Lotus Notes attribute, with respect to the non-Lotus Notes documents, Plaintiff admits that they were not deleted; rather, the non-Lotus Notes documents, which were marked "unreadable" by Plaintiff because Plaintiff did not have the proper software to open same, were made intelligible by the vendor because the vendor did have the proper software to open said documents. See id. It is irrelevant that Plaintiff may now have a more detailed explanation as to how the non-Lotus Notes documents came to be inadvertently produced. Magistrate Judge Hedges exercised his discretion in determining that – based upon the evidence presented to him at that time – Plaintiff had waived the privilege of the non-Lotus Notes documents by failing to meet its burden of demonstrating that it had taken reasonable precautions to avoid the inadvertent disclosure of same. See Tr. (March 27, 2006) at 5:8-17; see, e.g., Ciba-Geigy Corp., 916 F. Supp. at 412. This Court, in its January 31, 2007 Opinion, determined that Magistrate Judge Hedges had not abused his discretion in making this determination, nor was such a determination contrary to law. See, e.g., Ciba-Geigy Corp., 916 F. Supp. at 412 ("Establishing that a disclosure was unintentional . . . does not go far in establishing the absence of waiver. Rather, the party resisting a waiver argument must demonstrate that it undertook reasonable precautions to avoid inadvertent disclosures of privileged documents.").

Plaintiff now argues that this Court's January 31, 2007 holding – affirming Magistrate Judge Hedges' determination with respect to the non-Lotus Notes documents, while reversing and remanding his determination with respect to the Lotus Notes documents – will result in "manifest injustice." As stated in this Court's January 31 Opinion, Magistrate Judge Hedges' holding with respect to the Lotus Notes documents was based on a clearly erroneous factual determination related to a Lotus Notes attribute.[5] To the contrary, Magistrate Judge Hedges had an accurate understanding of the circumstances giving rise to the disclosure of the non-Lotus Notes documents. Notably, Plaintiff has made no showing as to why the separate treatment of these two categories of documents (i.e., the Lotus Notes documents and the non-Lotus Notes documents), given the specific circumstances of this case, would constitute "manifest injustice," nor has Plaintiff cited to any legal authority in support of same. Indeed, Plaintiff has failed to do anything more than rehash the same arguments it advanced in its Cross-Appeal of Magistrate Judge Hedges' April 20, 2006 Order. As a result, to the extent that Plaintiff's motion for reconsideration is based on the notion that "manifest injustice" will occur if the Court does not reverse and remand Magistrate Judge Hedges' determination with respect to the non-Lotus Notes documents, Plaintiff's motion is denied.[6]

_____

[5] In particular, the Court found "Magistrate Judge Hedges' factual determination that the error made by Amersham and/or its vendor was not apparent on the face of the documents to be clearly erroneous." (Jan. 31 Op. at 6).

[6] Plaintiff does not move for reconsideration on the basis that this Court overlooked certain matters which were presented to this Court on appeal. The Court notes, however, that Plaintiff makes several references to the Court's failure to consider certain factors. To the extent

**CONCLUSION**

For the reasons given above, the Court denies Plaintiff's motion for reconsideration.

---

that the Court should construe Plaintiff's motion as based on the theory that the Court failed to consider matters which were presented to but overlooked by this Court on appeal, for the reasons that follow, any such argument would likewise fail. See, e.g., Holten, 2002 U.S. Dist. LEXIS 10151, at *4 (explaining that motions for reconsideration "may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue.").

Plaintiff suggests that this Court failed to consider: (1) the issue of whether Defendant had violated New Jersey Rule of Professional Conduct 4.4(b), and (2) the applicability of the July 24, 2004 Protective Order. Thus, according to Plaintiff, because the Court did not expressly address New Jersey Rule of Professional Conduct 4.4(b) and the July 24, 2004 Protective Order in the context of the non-Lotus Notes documents, the Court, therefore, must not have considered same in reviewing Magistrate Judge Hedges' April 20, 2006 decision. Plaintiff's suggestion in this regard is inaccurate.

In reviewing Magistrate Judge Hedges' April 20 decision (including the comments he placed on the record during the March 27, 2006 hearing) the Court took note of the fact that Magistrate Judge Hedges was aware of both Defendant's ethical obligations, as well as the July 24 Protective Order, but nevertheless found that Plaintiff waived the privilege of the non-Lotus Notes documents by failing to demonstrate that it had taken reasonable precautions to prevent the inadvertent disclosure of same. Implicit in his analysis was the finding that Plaintiff's failure to take reasonable precautions to prevent the inadvertent disclosure of the non-Lotus Notes documents outweighed any countervailing interests or obligations, such as Defendant's ethical obligations or the underlying protective order. As a result, this Court determined that Magistrate Judge Hedges did not abuse his discretion in making this determination, given the specific circumstances of this case. Plaintiff has failed to provide this Court with any reason to find otherwise – both in appealing Magistrate Judge Hedges' decision, and now upon request for reconsideration. See, e.g., Ciba-Geigy Corp., 916 F. Supp. at 411 (explaining that the approach taken by courts in this district "focuses on the reasonableness of the steps taken to preserve the confidentiality of privileged documents"). See generally Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion"). Whether or not this Court agrees with Magistrate Judge Hedges' determination is irrelevant. See, e.g., Bowen v. Parking Auth. of City of Camden, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002) (explaining that the district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently).

7

An appropriate Order accompanies this Letter Opinion.

Sincerely,

 /s/ Jose L. Linares
Jose L. Linares
United States District Judge